IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-397

 No. COA20-846

 Filed 3 August 2021

 Mecklenburg County, No. 20-CVD-8127

 WILLIAM J. PARRA ANGARITA, Plaintiff,

 v.

 MARGUERITE EDWARDS, Defendant.

 Appeal by Defendant from an order entered on 5 August 2020 by Judge Paulina

 Havelka in Mecklenburg County District Court. Heard in the Court of Appeals 12

 May 2021.

 William J. Parra Angarita, pro se.

 Marguerite Edwards, pro se.

 JACKSON, Judge.

¶1 The issue in this case is whether the trial court erred or abused its discretion

 in granting a civil no-contact order against a pro se litigant. We conclude that the

 trial court committed no error or abuse of discretion and affirm the order.

 I. Factual and Procedural Background

¶2 William Parra Angarita (“Plaintiff”) and Marguerite Edwards (“Defendant”)

 are next-door neighbors on Dominion Village Drive in Charlotte, North Carolina.

 Beginning sometime in February or March of 2020, Defendant began to suspect that
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 someone was breaking into her house. On 7 March 2020, she reported the suspected

 break-ins to the police. She began to suspect Plaintiff was the perpetrator and

 reported his name to the police. According to Plaintiff, he has never been contacted

 by the police. Defendant has a security system and multiple cameras installed but

 has no video evidence of Plaintiff breaking into her house. Defendant claims to be

 suffering lasting health consequences due to the alleged break-ins.

¶3 From time to time, Plaintiff’s children would accidentally throw soccer balls

 into Defendant’s fenced, locked yard. On 23 March 2020, Plaintiff received a phone

 call from Defendant requesting that his children stop throwing balls into her yard.

 During this call, Defendant used “harsh language” towards Plaintiff’s children.

 Defendant called Plaintiff again on 6 April 2020, this time threatening to call the

 police and making offensive, racist statements about Plaintiff and his family.

¶4 A series of escalating interactions ensued. Following a verbal altercation about

 the balls, Defendant threatened to have Plaintiff arrested, and Defendant alleges

 that at some point Plaintiff “came to her front door and rang her door bell several

 times in a rage.” Defendant responded by posting a sign on her door that accused

 Plaintiff of breaking into her house and notifying the homeowners’ association of the

 alleged break-ins.

¶5 Throughout these events, Defendant sent Plaintiff at least eight text messages

 with “derogatory, defamatory, and incendiary language,” including some express or
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 implied threats. Defendant also yelled accusations and racist remarks at Plaintiff’s

 family from her property. Plaintiff’s wife and sister-in-law testified that Defendant

 shouted accusations and racist remarks directly at them on multiple occasions.

 Plaintiff states that the behavior of Defendant has caused significant stress for him

 and his family.

¶6 On 8 July 2020, Plaintiff filed a complaint in Mecklenburg County District

 Court, seeking a permanent civil no-contact order against Defendant under N.C. Gen.

 Stat § 50C-2, and requesting that the court bar Defendant from “verbally abusing any

 family members living in [Plantiff’s] household and to stop yelling and shouting from

 her property towards ours,” among other remedies. Defendant was served with the

 complaint on 18 July 2020. On 28 July 2020, Defendant filed (but apparently did not

 serve upon Plaintiff) an answer to the complaint and a written motion to dismiss.

¶7 A hearing was held on 4 August 2020 before the Honorable Paulina Havelka.

 Neither Plaintiff nor Defendant was represented by an attorney. During the hearing,

 testimony was heard from Plaintiff, Plantiff’s wife, and Plaintiff’s sister-in-law, who

 described the harassment they had faced from Defendant over the past year.

 Defendant also testified at the hearing, stating her belief that Plaintiff was

 continually breaking into her house, tampering with her belongings, and “doing

 criminal activities for unknown reasons.” At several points, both Plaintiff and

 Defendant attempted to introduce documentary exhibits (such as a notarized
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 statement from their neighbors, or emails from the local police department) but the

 court refused to admit the exhibits after ruling they were inadmissible hearsay.

¶8 At the conclusion of the parties’ testimony, the trial court granted Plaintiff a

 permanent no-contact order against Defendant pursuant to § 50C-7. The trial court

 concluded that

 [Plaintiff] has suffered unlawful conduct by [D]efendant in
 that: Defendant continuously harasses Plaintiff and
 Plaintiff’s household. Posts letters on Defendant’s door
 with an arrow stating Plaintiff is a “dangerous criminal.”
 In open court Defendant stated “Plaintiff smells” and does
 so while in her yard at Plaintiff and Plaintiff’s family.

¶9 In its order, the trial court checked boxes indicating that Defendant: (1) shall

 not “visit, assault, molest, or otherwise interfere with” Plaintiff; (2) “cease

 harassment” of Plaintiff; (3) “not abuse or injure” Plaintiff; and (4) not contact

 Plaintiff “by telephone, written communication, or electronic means” for a period of

 one year. The trial court also added an additional handwritten order that Defendant

 “shall obtain a mental health evaluation,” with a review hearing scheduled for 8

 December 2020.

¶ 10 On 5 August 2020, Defendant contacted the clerk of court and told her that she

 was having difficulty reading the court’s written order due to its legibility. Later that

 same day, the court issued an “amended” no-contact order, that was otherwise

 identical with the exception of checking an additional box that “the Defendant cease
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 stalking the Plaintiff.” Defendant filed a timely written notice of appeal from the

 court’s amended order on 14 August 2020.

 II. Analysis

¶ 11 In her pro se appeal, Defendant raises five arguments, contending that: (1) the

 trial court erred by misquoting her in the findings section of the no-contact order; (2)

 the trial court was “exceptionally hostile” to Defendant during the hearing; (3) the

 trial court erred by making an improper amendment to the no-contact order; (4) the

 trial court erred by assigning her a mental health evaluation; and (5) the trial court

 erred by failing to consider her motion to dismiss. We disagree and hold that the trial

 court committed no error or abuse of discretion.

 A. Preservation

¶ 12 As a threshold matter, we must address whether Defendant has properly

 preserved her arguments for appellate review. Our Appellate Rules provide that

 [i]n order to preserve an issue for appellate review, a party
 must have presented to the trial court a timely request,
 objection, or motion, stating the specific grounds for the
 ruling the party desired the court to make . . . It is also
 necessary for the complaining party to obtain a ruling upon
 the party’s request, objection, or motion.

 N.C. R. App. P. Rule 10(a)(1).

¶ 13 In interpreting this Rule, we have long held that “where a theory argued on

 appeal was not raised before the trial court, the law does not permit parties to swap

 horses between courts in order to get a better mount in the appellate courts.” State
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 v. Holliman, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (internal marks and

 citations omitted). Accordingly, where a defendant “impermissibly presents a

 different theory on appeal than argued at trial, [the] assignment of error [is] not

 properly preserved” and is “waived by [the] defendant.” Id. at 124, 573 S.E.2d at 686.

¶ 14 Here, Defendant has failed to preserve two issues—the trial court’s failure to

 consider her motion to dismiss, and the trial court’s alleged “undue hostility” during

 the hearing—because Defendant did not raise either of these issues before the trial

 court.1 However, in our discretion we nevertheless choose to review all of Defendant’s

 arguments, as none of the issues raised by Defendant show any error by the trial

 court.

¶ 15 We have previously addressed a similar scenario in Seafare Corp. v. Trenor

 Corp., wherein the pro se defendants raised a number of issues on appeal that had

 not been raised before the trial court. Despite this waiver, we nevertheless reviewed

 the defendants’ assertions of error, explaining:

 Defendants next assign error to the admission of much of
 plaintiff’s evidence. Defendants failed, however, to object
 to the admission of any evidence . . . . An unrepresented
 party is not relieved of the duty to object to evidence in

 The remainder of Defendant’s arguments were properly preserved because they
 1

 involved either findings of fact or conclusions of law in the trial court’s written order, or
 actions that the trial court took following the conclusion of the hearing (such as the
 amendment of the no contact order). See N.C. R. App. P. 10(a)(1) (noting that certain issues
 may be “deemed preserved” without any action taken by the appellant, such as “whether the
 judgment is supported by the verdict or by the findings of fact and conclusions of law”).
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 order to preserve the issue for appeal. Nevertheless, we
 have considered defendants’ arguments set forth in their
 brief and conclude there was no prejudicial error.

 Seafare Corp. v. Trenor Corp., 88 N.C. App. 404, 413, 363 S.E.2d 643, 650-51 (1988)

 (internal marks and citations omitted).

¶ 16 Likewise, despite Defendant’s failure in the present case to preserve her

 arguments for appellate review, we exercise our discretion under Rule 2 to consider

 these arguments and conclude that the trial court committed no error. See N.C. R.

 App. P. 2.

 B. Misquotation

¶ 17 Defendant first argues that the trial court erred by misquoting her in the

 findings section of the no-contact order. We disagree and discern no error in the trial

 court’s findings of fact. We review a trial court’s findings of fact only to establish that

 they were supported by competent evidence:

 [W]hen the trial court sits without a jury, the standard of
 review on appeal is whether there was competent evidence
 to support the trial court's findings of fact and whether its
 conclusions of law were proper in light of such facts. While
 findings of fact by the trial court in a non-jury case are
 conclusive on appeal if there is evidence to support those
 findings, conclusions of law are reviewable de novo.

 Romulus v. Romulus, 215 N.C. App. 495, 498, 715 S.E.2d 308, 311 (2011) (internal

 marks and citations omitted).

¶ 18 Defendant’s argument centers around an alleged misquotation by the trial
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 court in the “Findings” section of the no-contact order. The trial court wrote that “In

 open court Defendant stated ‘Plaintiff smells’ and does so while in her yard at

 Plaintiff and Plaintiff’s family.” Defendant contends that this misquotation is

 incorrect and is grounds for reversal. We disagree.

¶ 19 While it is true that Defendant never spoke those exact words during the

 hearing, she did say a number of closely related phrases in her written and oral

 testimony. In her answer to Plaintiff’s complaint and during the hearing, she stated,

 “I smelled a bad smell when I passed by the Plaintiff's open garage door” and “I knew

 who was breaking into my house . . . . I knew it was him by the smell.” Plaintiff

 testified that Defendant texted her statements like “[e]very time I smell the horrible

 odor you put in my house I want to yell at you criminal” and “[m]y house stinks like

 skunks from you and your people, you stinky criminal.” During cross examination,

 Plaintiff asked Defendant “can you explain how you say that [it] is a fact that I've

 been breaking into your house?” Defendant replied, “[t]he smell.”

¶ 20 This Court has previously upheld findings of fact by trial courts in civil cases

 that paraphrase testimony and draw reasonable inferences therefrom. For example,

 in In re Botros, 265 N.C. App. 422, 828 S.E.2d 696 (2019), the respondent challenged

 the trial court’s findings of fact by arguing that the findings did not accurately quote

 the words he spoke during the hearing. Id. at 429, 828 S.E.2d at 703. Specifically,

 the trial court’s order found that “[i]mmediately upon appearing before [the trial
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 court, the respondent] requested five minutes to ‘collect’ himself. [Respondent]

 appeared somewhat distressed and disoriented.” Id. Whereas, the video recording of

 the proceeding revealed that he requested to “have one – one moment” before

 beginning, “without saying it was to ‘collect’ himself.” Id. at 430, 828 S.E.2d at 703.

 This Court held that “[w]hile [the respondent] may not have used the precise words

 of the findings in his testimony, the findings reasonably paraphrase [his] testimony

 or are inferences reasonably drawn from that testimony.” Id. (internal marks and

 citation omitted).

¶ 21 Here, the trial court’s paraphrase that “Defendant stated ‘Plaintiff smells’” was

 a reasonable inference from the variety of olfactory assertions made by Defendant

 during the hearing and in her written answer. There was thus sufficient “evidence

 as a reasonable mind might accept as adequate to support a conclusion” that

 Defendant had stated, in effect, that “Plaintiff smells.” We hold that the trial court

 did not err by paraphrasing Defendant.

 C. Exceptional Hostility

¶ 22 Next, Defendant alleges that the trial court acted with undue hostility during

 the hearing, as indicated by the judge’s interruptions, tone, and general treatment of

 her. We disagree and find no error by the trial court.

¶ 23 The North Carolina Constitution requires that “right and justice shall be

 administered without favor, denial, or delay.” N.C. Const. art. I, § 18. Accordingly,
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 “[t]he law imposes on the trial judge the duty of absolute impartiality.” State v.

 Fleming, 350 N.C. 109, 125-26, 512 S.E.2d 720, 732 (1999) (internal marks and

 citation omitted). However, “[t]he trial judge also has the duty to supervise and

 control a defendant’s trial, including the direct and cross-examination of witnesses,

 to ensure fair and impartial justice for both parties.” Id. at 126, 512 S.E.2d at 732.

 “In evaluating whether a judge’s comments cross into the realm of impermissible

 opinion, a totality of the circumstances test is utilized.” Id. (internal marks and

 citation omitted).

¶ 24 Applying these principles to the remarks of the trial court here, and after

 conducting a thorough review of each alleged instance of improper conduct or hostility

 on the part of the trial judge, we detect no prejudicial error and reject Defendant's

 claim of “exceptional hostility.”

¶ 25 Turning first to the interruptions, it is apparent that the trial judge

 interrupted only in the interests of expediency and to bring a pro se Defendant into

 compliance with the rules of evidence.2 In this regard, the trial court’s actions were

 helpful to Defendant, if anything. For example, the trial court avoided wasting time

 2 See, e.g., N.C. Gen. Stat. § 8C-1, Rule 611(a) (2019) (“The court shall exercise
 reasonable control over the mode and order of interrogating witnesses and presenting
 evidence so as to (1) make the interrogation and presentation effective for the ascertainment
 of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from
 harassment or undue embarrassment.”).
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 by interrupting Defendant in this exchange:

 MS. EDWARDS: When you put in the complaint, why
 didn’t you complain about the break-ins and all that? Why
 did you not put that in your complaint when you filed it on
 – [interruption]

 THE COURT: I'm going to object to that and sustain it,
 ma’am. He’s already testified that the only reason he
 thought you had problems was over balls.

¶ 26 Likewise, Defendant’s remaining arguments concerning the trial court’s tone

 and treatment of Defendant were comfortably within the discretion of the trial judge.

 “A presiding judge is given large discretionary power as to the conduct of a trial.

 Absent controlling statutory provisions or established rules, all matters relating to

 the orderly conduct of the trial are within his discretion.” State v. Higginbottom, 312

 N.C. 760, 769-70, 324 S.E.2d 834, 841 (1985) (internal citation omitted).

¶ 27 Moreover, even assuming arguendo that the trial judge had displayed bias,

 “[i]n a non-jury case where the trial judge develops a bias or prejudice toward one

 party and where there is no evidence this bias or prejudice arose from any source

 outside the evidence and arguments presented in the case, the judgment entered by

 the trial court will be affirmed if it is otherwise properly entered.” Sowers v. Toliver,

 150 N.C. App. 114, 120, 562 S.E.2d 593, 597 (2002) (emphasis added) (Greene, J.,

 concurring). Here, there is likewise no evidence that the trial court’s attitude towards

 Defendant arose from any sort of personal bias, but rather from a disapproval of
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 Defendant’s disorganized arguments and mode of presenting evidence. Accordingly,

 the trial court did not abuse its discretion in its interactions with Defendant during

 the hearing.

 D. Improper Amendment

¶ 28 We next address Defendant’s argument that the trial court erred by improperly

 amending the no-contact order. We disagree and hold that the trial court did not

 abuse its discretion by amending the order.

¶ 29 Here, the trial court issued an amended no-contact order following Defendant’s

 request for a more legible copy of the order. The amended order contained identical

 content to the original order, with the exception of an additional box checked in the

 “Order” section: “The defendant cease stalking the plaintiff.”

¶ 30 Rule 60(a) of the North Carolina Rules of Civil Procedure permits a judge to

 sua sponte correct clerical mistakes in judgments resulting from an oversight or

 omission:

 Clerical mistakes in judgments, orders or other parts of the
 record and errors therein arising from oversight or
 omission may be corrected by the judge at any time on his
 own initiative or on the motion of any party and after such
 notice, if any, as the judge orders. During the pendency of
 an appeal, such mistakes may be so corrected before the
 appeal is docketed in the appellate division, and thereafter
 while the appeal is pending may be so corrected with leave
 of the appellate division.

 N.C. Gen. Stat. § 1A-1, Rule 60(a) (2019).
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

¶ 31 “Relief under Rule 60(a) is limited to the correction of clerical errors, and it

 does not permit the correction of serious or substantial errors.” In re Estate of Meetze,

 272 N.C. App. 475, 479, 847 S.E.2d 220, 224 (2020) (internal marks and citations

 omitted). A change in an order is considered substantive and outside the boundaries

 of Rule 60(a) “when it alters the effect of the original order.” Id. “A trial court’s order

 correcting a clerical error under Rule 60(a) is subject to the abuse of discretion

 standard.” Id.

¶ 32 “‘Clerical mistakes’ are typographical errors, mistakes in writing or copying

 something into the record, or other, similar mistakes that are not changes in the

 court’s reasoning or determination.” In re J.K.P., 238 N.C. App. 334, 343, 767 S.E.2d

 119, 124 (2014). For example, in In re J.K.P., this Court concluded that “that the

 term ‘clerical mistakes’ includes the inadvertent checking of boxes on forms.” Id. at

 343, 767 S.E.2d at 125 (internal marks and citation omitted). In that case, the trial

 court spoke with the respondent about the risks associated with proceeding pro se

 and asked the respondent to read and sign a waiver-of-counsel form. Id. at 343-44,

 767 S.E.2d at 124-25. After the respondent signed the form, the court accidentally

 checked the box labeled “Parent’s waiver is not knowing and voluntary.” Id. The

 trial court later amended the order sua sponte to indicate that the respondent’s

 waiver was indeed knowing and voluntary. Id. On appeal, we concluded that the

 checked box was an inadvertent clerical mistake in light of the trial court’s “findings
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 on the form, and its additional, contemporaneous statements at that hearing.” Id. at

 344, 767 S.E.2d at 125.

¶ 33 Here, the issue before us likewise becomes whether the trial court’s inclusion

 of an additional checked box on the amended no-contact order qualified as the

 amendment of a clerical mistake/omission, or instead was a substantive alteration of

 the order. We conclude the former characterization is more accurate—that the trial

 court’s amendment qualified as the correction of a simple clerical mistake in failing

 to check the appropriate box in its first order.

¶ 34 As explained above, Rule 60(a) expressly contemplates the correction of

 omissions, and a “clerical mistake” can include “the inadvertent checking of boxes on

 forms.” In re J.K.P., 238 N.C. App. at 343, 767 S.E.2d at 125. Based on the trial

 court’s findings and the evidence presented at the hearing, we conclude that the trial

 court most likely intended to originally check the box ordering that “[t]he defendant

 cease stalking the plaintiff,” and that the omission of the check on this box in the first

 order was a clerical mistake.

¶ 35 Though the trial court did not make an explicit ruling on stalking, there was

 evidence before the court that Defendant had engaged in a sustained pattern of

 harassing and verbally abusing Plaintiff and his family members. During the

 hearing, the trial court stated to Plaintiff that “I’m certainly not convinced you’re

 breaking into her house” and “I’m going to enter the order.” In the written order, the
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 trial court’s findings stated:

 The plaintiff has suffered unlawful conduct by the
 defendant in that: Defendant continuously harasses
 Plaintiff and Plaintiff’s household. Posts letters on
 Defendant’s door with an arrow stating Plaintiff is a
 “dangerous criminal.” In open court Defendant stated
 “Plaintiff smells” and does so while in her yard at Plaintiff
 and Plaintiff’s family.

¶ 36 These findings align with the definition of “stalking” as provided in the statute

 governing civil no-contact orders:

 Stalking. - On more than one occasion, following or
 otherwise harassing, as defined in G.S. 14-277.3A(b)(2),
 another person without legal purpose with the intent to do
 any of the following:

 a. Place the person in reasonable fear either for the
 person’s safety or the safety of the person’s
 immediate family or close personal associates.

 b. Cause that person to suffer substantial emotional
 distress by placing that person in fear of death,
 bodily injury, or continued harassment and that in
 fact causes that person substantial emotional
 distress.

 N.C. Gen. Stat § 50C-1(6) (2019).

¶ 37 In addition, on multiple occasions Defendant used language that could have

 placed “the [Plaintiff] in reasonable fear either for [his] safety or the safety of [his]

 immediate family or close personal associates.” Plaintiff’s uncontested testimony

 showed that Defendant sent threatening texts to Plaintiff on multiple occasions that

 implicated the safety of Plaintiff and his family:
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

  I hope the next person’s house you break into blows your
 brains out, you stinky criminal.

  I hope someones [sic] blow your brains out. I bet your
 brains stink.

  I’m hoping someone will kill you, stinky criminal.

  I wish someone would wipe you and your whole family
 out.

  People like you deserve to die and get off the earth.

¶ 38 Plaintiff’s sister-in-law testified that she “[doesn’t] feel safe because I don't

 know if she might have a gun or whatever.” Plaintiff’s wife testified that “everybody

 was afraid” at a family gathering due to the actions of Defendant. A finding that

 Defendant was stalking Plaintiff was thus consistent with the definition found in

 N.C. Gen. Stat. § 50C-1(6) is supported by the uncontested testimony offered at the

 hearing.

¶ 39 In Defendant’s brief, she cites to State v. Briggs, 249 N.C. App. 95, 790 S.E.2d

 671 (2016), and State v. Leaks, 240 N.C. App. 573, 771 S.E.2d 795 (2015), for the

 proposition that “decisions should not be changed when the defendant is not present.”

 These criminal cases are inapposite. Those holdings trace back to a longstanding

 common law right that requires that the accused criminal defendant “be personally

 present before the court at the time of pronouncing the sentence.” Ball v. United

 States, 140 U.S. 118, 131 (1891). This common law right is not applicable in the

 present civil case.
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

¶ 40 In sum, we hold that the trial court’s findings on the no-contact order and the

 uncontested testimony reasonably supported a finding of stalking, thus showing that

 the trial court made an inadvertent “clerical mistake” by not checking the box on the

 first version of the no-contact order. Accordingly, the trial court did not abuse its

 discretion in correcting this omission in the amended order.

 E. Mental Health Evaluation

¶ 41 Defendant next argues that the trial court erred by requiring her to obtain a

 mental health evaluation as part of the no-contact order. In the written order, the

 trial court checked box seven, entitled “Other: (specify)” and made a handwritten

 notation ordering that: “Defendant shall obtain a mental health evaluation. Review

 hearing on 12/8/20 in 4110 at 9:00am.” We disagree with Defendant’s argument and

 hold that the trial court did not abuse its discretion by ordering this evaluation.

¶ 42 To begin with, N.C. Gen. Stat. § 50C-5 grants a trial court considerable

 discretion in awarding remedies when a no-contact order is issued:

 (a) Upon a finding that the victim has suffered unlawful
 conduct committed by the respondent, the court may issue
 temporary or permanent civil no-contact orders as
 authorized in this Chapter. In determining whether or not
 to issue a civil no-contact order, the court shall not require
 physical injury to the victim.

 (b) The court may grant one or more of the following forms
 of relief in its orders under this Chapter:

 ...
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 (7) Order other relief deemed necessary and
 appropriate by the court, including assessing
 attorneys’ fees to either party.

 N.C. Gen. Stat. § 50C-5(a)-(b) (2019).

¶ 43 Moreover, Chapter 50C is explicit about the non-exclusivity of the remedies

 laid out in Section 5—“[t]he remedies provided by this Chapter are not exclusive but

 are additional to other remedies provided under law.” Id. § 50C-11 (2019).

¶ 44 This Court recently interpreted the limits of the remedies under § 50C-5 in

 Russell v. Wofford, 260 N.C. App. 88, 816 S.E.2d 909 (2018). In that case, the trial

 court issued a Chapter 50C no-contact order against a defendant who committed acts

 of nonconsensual sexual conduct against the plaintiff. Id. at 89, 816 S.E.2d at 910.

 Among the listed remedies, the trial court included in its order an “other” remedy

 requiring the defendant to surrender all firearms to the sheriff’s department,

 revoking his concealed carry permit, and barring all firearm purchases for the

 duration of the order. Id. at 89-90, 816 S.E.2d at 910.

¶ 45 We ultimately reversed that portion of the order, holding that “District Courts

 do not have . . . unfettered discretion under Chapter 50C to order any relief the judge

 believes necessary to protect a victim.” Id. at 94, 816 S.E.2d at 913. Despite the

 broad language of the statute, we nevertheless determined that ordering a defendant

 to surrender all firearms was too broad a remedy and was too tenuously connected to

 the issues raised by the no-contact order. Id. Instead, we concluded that “the catch-
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 all provision [in § 50C-5] limits the court to ordering a party to act or refrain from

 acting . . . in relationship to [the plaintiff.]” Id. at 93-94, 816 S.E.2d at 912-13 (citing

 State v. Elder, 368 N.C. 70, 72-73, 773 S.E.2d 51, 53 (2015)). We also emphasized

 that a Chapter 50C remedy must not abridge any fundamental rights guaranteed by

 the federal and state constitutions. Id.

¶ 46 We therefore held that requiring the defendant to surrender his firearms,

 revoking his concealed carry permit, and forbidding the purchase of firearms without

 statutory notice of those possibilities went beyond “ordering a party to act or refrain

 from acting in relationship to . . . [the] plaintiff.” Russell, 260 N.C. App. at 94, 816

 S.E.2d at 913 (internal marks and citation omitted).

¶ 47 In contrast, in the present case we do not believe that the single mental health

 evaluation ordered by the trial court went beyond the limits of § 50C-5 or abridged

 any of Defendant’s fundamental constitutional rights. The remedy ordered by the

 trial court here was narrowly tailored; was directly related to the issues raised by the

 no-contact order; did not abridge any constitutional right; and was analogous to other

 remedies commonly awarded by trial courts in similar civil cases.

¶ 48 For example, the statute governing domestic violence protective orders states

 that a trial court may “[o]rder any party the court finds is responsible for acts of

 domestic violence to attend and complete an abuser treatment program if the

 program is approved by the Domestic Violence Commission.” N.C. Gen. Stat. § 50B-
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 3(a)(12) (2019). Abuser treatment programs, also known as “batterer intervention

 programs,” contain elements analogous to a basic “mental health evaluation.”3 This

 type of mental health program is one among a list of non-exhaustive remedies,

 comparable to the list in § 50C-5, containing no extra due process requirements.

 Rather, § 50C-5(b)(7) requires only that the trial court find the measure “necessary

 and appropriate.”

¶ 49 In this regard, the trial court reasonably found the testimony offered at trial

 alarming enough to order the Defendant to “act in relationship to the Plaintiff” by

 completing a mental health evaluation, in order to aid Defendant in restoring

 peaceful relations with her neighbor and in examining her concerning beliefs that

 Plaintiff was breaking into her home.

¶ 50 Defendant’s testimony and written submissions showed that she exhibited a

 number of concerning, delusional beliefs and behaviors in regards to Plaintiff, such

 as: (1) Defendant’s baseless conviction that Plaintiff was continually breaking into

 her house, even though her home security system never indicated a break-in; (2)

 Defendant’s belief that Plaintiff was “damaging her [heating] system by putting some

 type of substance in the pipes in the furnace lines”; (3) Defendant’s belief that

 3 See, e.g., North Carolina Batterer Intervention Programs: A Guide to Achieving
 Recommended Practices, N.C. Council for Women (March 2013),
 https://files.nc.gov/ncdoa/BattererInterventionHandbook.pdf.
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 Plaintiff had “put some type of white powder all over everything in [her] house”; (4)

 Defendant’s belief that Plaintiff was tampering with the food in her fridge; (5)

 Defendant’s continued verbal harassment of Plaintiff and his family; and (6)

 Defendant’s repeated texts containing death threats sent to Plaintiff and his family.

 Based on this evidence of Defendant’s troubling beliefs and behaviors towards

 Plaintiff, we cannot conclude that the trial court overstepped the bounds of § 50C-5

 in ordering Defendant to receive a mental health evaluation as part of the no-contact

 order. The trial court did not abuse its discretion in ordering the mental health

 evaluation.

 F. Failure to Consider Motion to Dismiss

¶ 51 Defendant finally argues that the trial court abused its discretion by not

 considering the motion to dismiss which she filed prior to the hearing. We disagree

 and conclude that the trial court did not abuse its discretion by failing to consider

 Defendant’s defective motion.

¶ 52 On 28 July 2020, shortly before the date of the hearing, Defendant filed a

 motion to dismiss—but did not serve the motion upon Plaintiff. At the hearing, the

 court stated that the court had not considered the documents in the file:

 MS. EDWARDS: Your Honor, I would like to -- I have a
 question. Did the documents that I submitted, are they in
 my file today?

 THE COURT: Whether they would be or not, ma’am, you
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

 still have to follow the court rules and evidence rules in the
 courtroom. I don’t look at anything in the file. I listen to
 the testimony and that’s it. So if you have something you
 want me to look at, you would have to have them with you
 today.

 MS. EDWARDS: I do.

 THE COURT: Okay. Well, then you’re going to be able to
 enter it into evidence later.

 MS. EDWARDS: Okay.

 THE COURT: When it’s your turn.

¶ 53 From the record, it appears that Defendant’s “motion to dismiss” was a

 document appended to her written answer. The answer was filed with Mecklenburg

 County District Court on 28 July 2020. However, the record contains no indication,

 nor does Defendant claim, that the motion to dismiss was ever served upon Plaintiff.

¶ 54 Rule 5(a) of the North Carolina Rules of Civil Procedure requires service of

 process for written motions: “every pleading subsequent to the original complaint . . .

 [and] every written motion . . . shall be served upon each of the parties.” N.C. Gen.

 Stat. § 1A-1, Rule 5(a) (2019). Written motions must also be filed and served under

 Rule 5(d): “[t]he following papers shall be filed with the court, either before service

 or within five days after service: . . . (2) Written motions and all notices of hearing.”

 Id., Rule 5(d). A motion which is not served upon all parties is “procedurally flawed”

 and need not be considered by the court. See Cap. Res., LLC v. Chelda, Inc., 223 N.C.

 App. 227, 242, 735 S.E.2d 203, 214, n.6 (2012).
 ANGARITA V. EDWARDS

 2021-NCCOA-397

 Opinion of the Court

¶ 55 Here, because Defendant’s motion to dismiss was not properly served, the trial

 court acted properly in refusing to consider it. Moreover, Defendant was free to make

 an oral motion to dismiss at the hearing, but failed to do so. See N.C. Gen. Stat. § 1A-

 1, Rule 7(b). The trial court invited Defendant to present her evidence and

 submissions during the hearing, but Defendant did not bring the matter back up. We

 accordingly hold that the trial court did not err in refusing to consider Defendant’s

 procedurally defective motion.

 III. Conclusion

¶ 56 Because there was no error or abuse of discretion in any of the trial court’s

 rulings, we affirm the no-contact order in all respects.

 AFFIRMED.

 Judge DILLON concurs.

 Judge GRIFFIN concurs in result.